Aninda Mukherjee
37611 Shelter Rd
CA-94560 NEWARK
302-743-8382
aninda_mukherjee@hotmail.com

Pro Se

FILED

FEB 05 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| Aninda Mukherjee,<br><br>          Plaintiff,<br><br>vs.<br><br>Jennifer B. Higgins, Acting Director, United States Citizenship and Immigration Services<br><br>          Defendant | Case No.: C25-01251 SK<br><br>~~FIRST AMENDED~~ COMPLAINT |

**INTRODUCTION**

1.      Pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), Plaintiff hereby file this First Amended Complaint within 21 days of service upon Defendants as a matter of right. *See* ECF Doc Nos. 6 and 6-1, Proof of Service and Proof of Service Exhibits.

2.      Throughout its history, America's prosperity has been made possible by the ingenuity, entrepreneurial spirit, investment, and hard work of waves of new immigrants and their families. Congress, under its constitutional authority to regulate commerce with foreign nations and to establish a uniform rule of naturalization, has enacted a detailed and complex statutory scheme, in part, to foster the attraction of talent, labor, investment, and entrepreneurship to the United States. The EB-5 Investor Visa Program has played a key role in realizing these goals of economic growth through immigration.

3.      In pursuit of lawful permanent resident status in the U.S., Plaintiff have invested $800,000, through designated Regional Centers, to qualify for an immigrant visa under 8 U.S.C. § 1153(b)(5), as updated by the EB-5 Reform and Integrity Act of 2022 (Pub. L. No. 117-103, Div. BB).

4.      To qualify for an EB-5 immigrant visa, applicants must file Form I-526E with United States Citizenship and Immigration Services (hereafter "USCIS" or "The Agency"). This is "just the first of several steps in the process of securing an EB-5 visa, and eventually, unconditional status as a lawful permanent resident." *See Lyons v. U.S.Citizenship and Immigration Services et al, Civ. Act. No. 1:2021-cv-03661, 2023 WL 144879, at \*2 (S.D.N.Y.Jan. 10, 2023).*

5.      For over one year, the Plaintiffs' Form I-526E Immigrant Petitions by Alien Entrepreneur have remained pending without adjudication due to the Defendant's (1) unprecedented and unlawful processing delays prior to July 2021, (2) improper interpretation of Section 203(b)(5) of the Immigration and Nationality Act ("INA") and the associated EB-5 Regional Center Program provisions, (3) slow and inconsistent resumption of regional center-related Form I-526 and I-526E processing beginning in March 2022, and (4) a series of administrative dysfunctions that threaten to undermine

the integrity of the entire EB-5 program. The Defendant's unlawful actions have caused significant harm to the Plaintiff.

6.     On March 15, 2022, Congress passed the Consolidated Appropriations Act, which included the EB-5 Reform and Integrity Act of 2022 ("RIA"). Congress amended INA Section 203(b)(5) and significantly changed the Regional Center Program. The RIA also requires the "grandfathering" of petitions pending adjudication prior to September 2026. *See* also 8 U.S.C.1153(b)(5).

7.     To date, even after Congress clarified the intention of the program's permanence, and notwithstanding the RIA, USCIS has taken no substantive action on Plaintiffs' pending immigrant petitions, without justification. Plaintiffs' request that the Court act to prevent further economic and emotional hardship to them, especially after investing at least $800,000 and creating 10+ jobs for American workers through the EB-5 immigrant visa process.

### PARTIES

8.     Plaintiff Aninda Mukherjee is a citizen and national of India. He is a Regional Center EB-5 Investor. Plaintiff Aninda Mukherjee, a lawful applicant for immigration benefits residing in California, who seeks adjudication of his Form I-526E, Form I-485 and Form I-131.

9.     Defendant Jennifer B. Higgins is Acting Director of the United States Citizenship and Immigration Services ("USCIS"). She oversees the adjudication of all immigration benefits petitions under 8 U.S.C. § 1153(b)(5). Ms. Higgins is sued in her official capacity.

**VENUE AND JURISDICTION**

10.    This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331. *Califano v. Sanders,* 430 U.S. 99, 106 (1977).

11.    The United States has waived sovereign immunity over claims, other than relief seeking money damages, relating to agency action or inaction from which a person has suffered a legal wrong. *See* 5 U.S.C. § 702.

12.    The Court is authorized to review agency action and inaction under the *Administrative Procedure Act* (APA). *See* 5 U.S.C. §§ 702, 704, 706(1), (2).

13.    Under the APA, this Court can compel agency action that is unreasonably delayed or unlawfully withheld. *See* 5 U.S.C. §§ 555(b), 706.

14.    This Court has authority to grant relief under the Declaratory Judgment Act (28 U.S.C.§ 2201).

15.    Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(C) because the Petitioner resides in the Northern District of California.

16.    No statute or regulation requires an administrative appeal of the delays the Plaintiff challenges in this case. Thus, the Plaintiff has exhausted all administrative remedies or constructively exhausted all administrative remedies. *Darby v. Cisneros*, 509 U.S. 137 (1993)..

17.    A substantial part of the events giving rise to the claim occurred within this district

18.    There is no real property involved in this action.

**INTRADISTRICT ASSIGNMENT**

19.    Pursuant to L.R. 3-2(d), the basis for assignment to the San Francisco/Oakland Division is that the case is a 'civil action that arise[s] in the counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, or Sonoma.' Because the Petitioner, Aninda Mukherjee, resides in Alameda County, California, the San Francisco/Oakland Division is the appropriate assignment for this case.

20.     The Plaintiff provides the Court with a legal and practical overview of the EB-5 visa, including the Agency's practices in adjudicating benefits related to EB-5 visas. Beyond unreasonable processing times, these facts, taken together, illustrate significant dysfunction within the immigration service, including arbitrary and inconsistent guidance that lacks reasoned agency decision-making. Such actions include the submission of contradictory sworn statements under oath and the unlawful prioritization of some EB-5 investors over others in contravention of any stated rule of reason.

## LEGAL BACKGROUND

### The Beginnings of the EB-5 Regional Center Program

21.     Congress created the EB-5 visa program as part of the *Immigration Act of 1990*. This program established an immigrant visa category for foreign nationals who invest $1 million—or $500,000 in Targeted Employment Areas (TEAs), which include certain high-unemployment or rural areas—into a new commercial enterprise ("NCE") that creates at least ten jobs for American workers. *See* INA § 203(b)(5), 8 U.S.C. § 1153(b)(5).

22.     On October 6, 1992, Congress passed the *Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act* (the 'RC Statute'), which enacted the original provisions of the Pilot Regional Center Program under §610(a). *See* 8 U.S.C. §§ 1201(a)(1), 1202(a); 22 C.F.R. §§ 41.61(a), 42.32(e)(1), 42.41. The 'Immigrant Investor Pilot Program' (also known as the Regional Center Program) was designed to allow for more flexible job creation methodologies, often involving larger, pooled investments through USCIS-designated entities called 'Regional Centers.' *See* Pub. L. No. 102-395.

23.     On September 28, 2012, Congress deleted the word "Pilot." Now called the "EB-5 Regional Center Program," the program was to become a permanent fixture of the immigration system. *See* Pub. L. No. 112-176, 126 Stat. 1325 (Sept. 28, 2012).

24.     Congress allocated a set percentage of overall immigrant visas for the EB-5 program and provided that a minimum number of these must be allocated to the Regional Center Program: "not less than 3,000 of the [EB-5] visas made available . . . in each fiscal year shall be reserved for qualified immigrants who invest in a new commercial enterprise described in subparagraph (a) which will create employment in a targeted employment area." Pub. L. No. 102-395 § 610(b); 8 U.S.C. § 1153(b)(5)(B).

25.     Although the EB-5 program was used relatively sparingly for much of its history, it gained significant traction following the 2008 Global Financial Crisis, as developers faced increased difficulty in attracting more conventional forms of capital.

26.     In 2014, the EB-5 program saw its first oversubscription of visas, resulting in visa retrogression, specifically for those investors born in Mainland China.

27.     Despite the shortage of visas, USCIS continues to process petitions. However, the agency has faced challenges in effectively managing the program, including inconsistent adjudication policies and fluctuating processing times.

### USCIS' IPO Plagued by Petition Processing Delays

28.     Since at least 2012, USCIS has stated publicly and regularly at stakeholder meetings and calls that its goal for adjudications is six months or less. Yet processing times seem to increase year after year nearly every year.

29.     In 2016, the Agency raised the fee for Form I-526 from $1,500 to $3,675 with the stated goal to reduce processing times. 81 Fed. Reg. 25328.

30.     In response to the public comments on the Notice of Proposed Rulemaking, the Agency stated:

> USCIS has taken multiple steps to reduce Form I-526 processing times. Specifically, USCIS is in the process of hiring and training additional adjudications officers, economists, and support staff for these forms. Additionally, USCIS is working to revise the EB-5 regulations and preparing updates to the EB-5 Policy Manual. USCIS is also improving the forms and instructions for the EB-5 program. The fee increase for the EB-5 program is intended to support

these efforts, with the goal of improving operational efficiencies while enhancing predictability and transparency in the adjudication process. USCIS acknowledges that delays in Form I-526 adjudications negatively affect both immigrant investors and the projects awaiting the release of their investment funds from escrow. USCIS is committed to processing Form I-526 filings as efficiently as possible.

Id.

31.     However, since the fee increase in 2016, processing times have substantially increased.

32.     Prior to raising its fees on Form I-526 in 2016, the IPO's published processing times for these forms was 13.9 months in 2015 and 15.9 months in 2016. *See* USCIS Processing Times, https://egov.uscis.gov/processing-times/historic-pt (*last accessed* Jan. 26, 2025).

33.     Since that time, processing times have only increased, with FY 2024 data pegging average Form I-526 processing times at 53.8 months and FY 2025 to date at 72.6 months. Id.

For whatever reason, USCIS does not publish average Form I-526E processing times.

34.     This disturbing trend began well before the COVID-19 pandemic or any perceived lack of statutory authority to adjudicate petitions. Despite collecting more than double the filing fees, USCIS' adjudication of Forms I-526 began to drop sharply in Fiscal Year 2019, completing only 4,673 adjudications compared to 15,122 the year prior. *See* "Number of Form I-526, Immigrant Petition by Alien Entrepreneur by Fiscal Year, Quarter, and Case Status Fiscal Year 2008-2019" available at https://www.uscis.gov/sites/default/files/document/data/I526_performancedata_fy2019_qtr4.pdf (*last accessed* Jan. 25, 2024). Delays still plague adjudications. It seems that more money to USCIS is not the answer. The Agency heavily raised filing fees in early 2024, yet published processing times continue to balloon:

| Form | Previous Fee | New Fee | Percentage of Increase |
|---|---|---|---|
| I-965G Regional Center Annual Statement | $3,035 | $4,470 | 47% |
| I-956 Regional Center Designation Application | $17,795 | $47,695 | 168% |
| I-956F Application for Approval of an Investment in a Commercial Enterprise | $17,795 | $47,695 | 168% |
| I-829 Petition by Investor to Remove Conditions | $3,750 | $9,525 | 154% |
| I-526/I-526E Immigrant Petition by Standalone/Regional Center Investor | $3,675 | $11,160 | 204% |

35 .    USCIS has never adequately explained, let alone attempted to justify, the sharp reduction in productivity despite significantly lower filing volume from its high points in the mid 2010s and significantly higher filing fees compared to then.

*EB-5 Revised By Congress*

36.    In March 2022, Congress made changes to the EB-5 program through the EB-5 Reform and Integrity Act of 2022 ("RIA"), part of the *Consolidated Appropriations Act.* This included raising the minimum investment amounts to $800,000 for an investment in a rural, high unemployment, or infrastructure project and $1,050,000 for all other projects. USCIS took the position that it could resume Regional Center-related petition adjudication and accept new filings as of May 14, 2022.

37.    The RIA introduced updates to Form I-526, including the introduction of Form I-526E. The Form I-526 is functionally identical to Form I-526E. The key difference is

that the former is now used by standalone investors and the latter is used by regional center investors[1]. Pre-RIA, all investors would use the same form.

38.    Given that USCIS seemingly was indifferent to its dysfunctional processing times, Congress stepped in. This was done in several ways.

39.    In the RIA, Congress required DHS to complete a fee study on or before March 15, 2023, and then correlate new fees for EB-5 related petitions and applications to processing times for the adjudication of EB-5-related benefit applications. RIA § 106(a), (b). Defendant admitted the performance-based fee study, due March 15, 2023, was not done. 89 Fed. Reg. at 6286-87. It still has not been completed. The purpose of the fee study was to enable Defendant to complete adjudications, on average, not later than" 90 to 240 days, depending on the nature of the petition. Id. at § 106(b). Instead, the Agency brazenly raised EB-5 fees this year (as discussed above), ignoring the intent of Congress, without any kind of EB-5 related performance metrics. *See* USCIS, *Frequently Asked Questions* on the USCIS Fee Rule (last updated Oct. 30, 2024), available at https://www.uscis.gov/forms/filing-fees/frequently-askedquestions-on-the-uscis-fee-rule (*last accessed* Jan. 25, 2025).

40.    Secondly, the RIA established "priority processing" for certain kinds of projects. Although it has been over two and half years since the RIA is passed, the Agency has yet to explain what it is and how it applies with its stated rules of reason.

Visa Availability Approach – A Purported Rule of Reason the Agency Cannot Explain.

41.    Unsurprisingly, given this deeply dysfunctional program, courts from around the country have heard cases from aggrieved EB-5 investors seeking judicial intervention compelling agency action on their long-pending petitions.

---

[1] *Cf. USCIS, I-526, Immigrant Petition by Standalone Investor, available at https://www.uscis.gov/i-526 (last accessed Jan. 25, 2025) with USCIS, Form I-526E, Immigrant Petition by Regional Center Investor, available at https://www.uscis.gov/i-526e (last accessed Jan. 25, 2025).*

42.     In defense of these cases, USCIS has consistently pled that cases are adjudicated under its so-called "visa availability approach", first enacted in March 2020. *See* https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (*last accessed* Jan. 25, 2025).

43.     Under this approach, which allegedly governs Form I-526 petition adjudication (Defendant has never explained what governs Form I-526E petition adjudication), the agency pivoted from a strict first-in-first-out process (which in truth was never the case), to only processing petitions for investors for whom a visa is either now or soon will be available[2]. This is done by comparing adjudication inventory with Chart B of the U.S. Department of State's monthly Visa Bulletin, which shows visa availability for a given investor's country of birth. This is done to maximize visa usage, but also to prevent children of investors from aging out.

44.     The Agency modified this process in July 2023 to group petitions by new commercial enterprise "within the workflow of petitions where the project has been reviewed and there is a visa available or soon to be available. These petitions are assigned by NCE using a FIFO methodology, namely, by date of the earliest filed petition in that workflow for each NCE." Id. As discussed below, Plaintiff has had their project already reviewed by USCIS.

45.     This approach, however, was neither consistently followed nor fully explained. Defendant's strongest defense of Form I-526 delay suits may be found in *Da Costa et al. v. Immigrant Investor Program Office et al.*, 80 F.4th 330 (D.C. Cir. 2023).

46.     While *Da Costa* upheld the dismissal of those plaintiffs' complaints—largely based on the plaintiffs' concession that the Visa Availability Approach was employed by USCIS to adjudicate affected petitions—at least two courts have declined to follow *Da Costa* on the grounds that this approach is not governing USCIS adjudications. *See,*

---

[2] The Plaintiff in this matter has a visa available and this approach would mandate timely adjudication.

e.g., *Guthikonda v. Jaddou*, No. 3:22-cv-375, at *10 (W.D. Ky. Sept. 25, 2023); *see* also *Chhajed v. Jaddou*, No. 2:23-CV-483, 2024 WL 1332258, at *4 (S.D. Ohio Mar. 27, 2024).

47.    There is reason to question the logic of *Da Costa*. At oral argument, counsel for Defendant was unable to explain how the Visa Availability Approach worked.

48.    USCIS's inconsistent adjudication of I-526E petitions demonstrates a failure to uphold uniformity in processing timelines as required by law. Notably, USCIS has approved other I-526E petitions with later priority dates, highlighting an arbitrary and inequitable approach to adjudication. This inconsistency directly contradicts the agency's own guidelines and undermines its credibility. For example, in *Shah et al. v. USCIS et al.* (*PacerMonitor Case No. 55044516*), approved petitions under similar circumstances further substantiate the claim of procedural inequity and arbitrary decision-making.

49.    Finally, the Visa Availability Approach does not take into consideration the adjudication  of post-RIA filings even though those have been happening and continue to happen today, as it does not apply to cases filed after March 2022.

50.    Taken together, this publicly available documentation paints a picture of deep dysfunction at the IPO. Indeed, stakeholder accounts further illustrate a deeply dysfunctional USCIS office.


## PLAINTIFFS' FACTUAL BACKGROUND


51.    Plaintiff Aninda Mukherjee is a Regional Center EB-5 investor.

52.    Plaintiff Aninda Mukherjee invested at least $800,000 in the New Commercial Enterprise ("NCE"), Brooklyn Basin 2, a project located in a Targeted Employment Area within the geographic scope of a designated EB-5 Regional Center, specifically 3G Fund 13, LLC ( Golden Gate Global Regional Center).

53.    Plaintiff Aninda Mukherjee put the required funds at risk and created at least 10 jobs for American workers.

54.    Upon information and belief, this NCE already has an approved Form I-956F, Application for Approval of an Investment in a Commercial Enterprise. Further, upon information and belief, this NCE already has at least one relevant Form I-526E approval. This means that USCIS has approved the static, project-related elements of this EB-5 filing for Plaintiff Aninda Mukherjee and his fellow investors. Therefore, USCIS need only review the source of funds elements of Plaintiff Aninda Mukherjee's Form I-526E filing. The Agency's policies state that they shall not re-review the static documents relating to the NCE that are common amongst all of the NCE's EB-5 investors.

55.    Plaintiff Aninda Mukherjee filed Form I-526E on December 29, 2023. USCIS took over three and a half months just to issue his Form I-526E Receipt Notice.[3]

56.    On March 19, 2024, USCIS finally assigned its receipt number **IOE8705105494.**

57.    However, for whatever reason, USCIS does not have an entry associated with this case number in its case status system. This strongly suggests that the file is either lost or outside of normal processing protocols.[4]

58.    A waiting period of over 13 months is not reasonable.

59.    Plaintiff Aninda Mukherjee's priority date is current under Chart A and Chart B of the Visa Bulletin. USCIS should be prioritizing this filing under its alleged visa availability approach. Instead, USCIS is delaying adjudication beyond the maximum six-month adjudication period Congress expressly intended for the EB-5 program.

60.    This unlawful delay harms Plaintiff Aninda Mukherjee specifically. For example:

    a. The Agency's delay has caused severe financial and psychological harm to

---

[3] *The receipting delay for the Plaintiff Aninda Mukherjee is patently illegal. It violates (APA) (5 U.S.C. § 706).*
[4] *See https://egov.uscis.gov/ (showing case number is invalid as of Jan. 25, 2025)*

Plaintiff Aninda Mukherjee and his family. He made significant financial and personal sacrifices to make the initial investment and pay the associated attorney and government filing fees. He is entitled to a final decision on his Form I-526E as he met all requirements and filed a complete Form I-526E petition over 13 months ago. Plaintiff Aninda Mukherjee felt he had no choice but to join a federal lawsuit and ask the Court to compel the Agency to end their unreasonable delay. As a result, he had to divert additional funds and resources to this lawsuit and away from his family's financial growth. The financial harm continues to cause Plaintiff Aninda Mukherjee and his family significant psychological stress.

b. Plaintiff Aninda Mukherjee and his wife, Ms. Hindoly Mukherjee feels their lives are indefinitely paused. They feel they cannot make major decisions in their professional and personal lives until they know the outcome of the Form I-526E adjudication. The uncertainty is deeply stressful for both of them, especially because of the potential implications for their daughters.

c. Plaintiff Aninda Mukherjee and Ms. Hindoly Mukherjee's daughter, who is a U.S. citizen by birth, is a driven student with dreams of a bright future. However, they fear that their daughter's dream will be derailed by the Agency's delay. Their daughter is halfway through 12th grade, and they want her to be able to focus on the college application process, but they have no idea whether she will finish her high school career in the United States or in India. The two countries have two different testing and admissions systems and the prospect of having to simultaneously preparing for both is daunting.

d.Plaintiff Aninda Mukherjee and his wife, Ms. Hindoly Mukherjee, have Advance Parole documents expiring on March 14, 2025, which have severely limited their ability to engage in international travel. Additionally, Plaintiff Aninda Mukherjee's mother, a 79-year-old medical patient, is unable to *see* him due to the lack of valid travel documents.

e. Plaintiff Aninda Mukherjee's life and his family's life will remain on hold and they will continue to suffer until the Agency acts.



### FIRST CAUSE OF ACTION

### (APA - Agency Action Unlawfully withheld)

### (Unreasonable Delay under the APA (5 U.S.C. § 555(b))

61.    Plaintiff realloge all facts above as though restated here.

62.    The Administrative Procedure Act ("APA") provides the basis for review of agency decisions, empowering this Court to hold unlawful and set aside any agency decision that is not in accordance with the law. *See* 5 U.S.C. § 706(2)(A). The APA provides the relevant cause of action for Plaintiff.

63.    In the absence of a specific statutory timeframe or deadline, the APA requires that "each agency shall proceed to conclude a matter presented to it" within "a reasonable time." *See* 5 U.S.C. § 555(b).

64.    Section 706(1) of the APA allows for federal courts to "compel agency action unlawfully withheld or unreasonably delayed." *See* 5 U.S.C. § 706(1).

65.    To determine whether a delay is reasonable, courts often consider the factors laid out in *Telecommunications Research & Action Ctr. v. FCC* ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984). The TRAC factors include:

> (1) "the time an agency takes to make a decision should be governed by a 'rule of reason'";
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudices by the delay; and
> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

> TRAC at 80 (internal citations omitted); *see also Menominee Indian Tribe of Wis. v. EPA,* 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring) (citing *TRAC* for the "general framework for deciding claims of agency delay that

courts can apply to unanswered rulemaking petitions").

66.    USCIS has unreasonably delayed action on Plaintiffs' pending I-526E petitions and these unreasonable delays are actionable under the APA. We take each factor in turn.

67.    First, USCIS does not have a specific "rule of reason" for adjudicating EB-5 petitions. This is clear because:

> a. USCIS does not decide EB-5 visa petitions on a "first in, first out" basis, and it never has. *See*, e.g., *Guthikonda at 14*-2 (W.D. Ky. 2022) (detailing 600 petitions with agency action after the oldest plaintiff in that particular suit).

> b. As discussed above, the so-called Visa Availability Approach does not actually govern adjudications and never has in fact. This is evident in the above discussion relating to Da Costa, and the existence of out-of-order adjudications across Plaintiffs' NCEs and their timings generally.

> c. USCIS regularly adjudicates later-filed Forms I-526E prior to earlier-filed Forms I-526E.

> e. In sum, it is abject chaos. USCIS' response timelines are not governed by any identifiable rationale.

68.    Upon information and belief, USCIS claims that a rule of reason exists regarding the 'Visa Availability Approach.' However, even if USCIS asserts the existence of a rule of reason based on visa availability, visas are available in the EB-5 category for the Plaintiff.

69.    Further, USCIS takes fees from petitioners when filing Forms I-526E in exchange for processing the petitions. USCIS sets the fee rate based upon the cost it incurs to process visa and benefit applications in a timely fashion. USCIS cannot defend its actions by alleging a lack of resources when it charges fees to pay for resources needed to fulfil its statutory duty. This is especially true when considering the agency more than doubled its fees to increase capacity in 2016. However, since this 2016 fee increase was instituted, processing times have increased from 15.9 months in 2016 to up to 52.9 months in 2024: an increase of 332%. Shockingly, the volume of Form I-526

filings received by the Agency has decreased. *See Lyons v. U.S. Citizenship and Immigration Services et al.*, Civ. Act. No. 1:2021-cv-03661, ECF. No. 44 at 44. (S.D.N.Y. Jan.1, 2023), *citing Keller Wurtz v. USCIS*, Civ. Act. No. 20-cv-02162, 2020 WL 4673949, at *4 ("The fact that USCIS takes longer to adjudicate other [I-526] petitions does not in itself show that such delay is reasonable, particularly where USCIS's rate of review appears to have stalled significantly[.]").

70.    Defendant collected $3,675 from the Plaintiff, which is several magnitudes higher than most individual immigration filings, including USCIS' premium processing service which requires petition decisions within 15 days. *See* USCIS Form G-1055, *available at* https://www.uscis.gov/g-1055 (*last accessed* Jan. 21, 2025). Premium processing is not available for EB-5 petitions. *See* USCIS, "How Do I Request Premium Processing?" available at https://www.uscis.gov/forms/all-forms/how-do-i-request-premium-processing (*last accessed* Jan. 21, 2025).

71.    It is, however, available for similarly detailed filings. USCIS has not explained why, for example, it can adjudicate a similarly complex nonimmigrant investor petition (E-2) or an EB-1A 'Alien of Extraordinary Ability' petition within 15 days at lower fees, yet Forms I-526E, at the time of most Plaintiffs' filings, cost $3,675.

72.    Indeed, in 2022 Quarter 1 (ending March 31), an I-526 adjudicator completed an average of just six Form I-526 petitions compared to fifty-four in 2018 Quarter 1 (ending March 31). *See* Lucid Professional Writing, "Factors and Trends Underlying I-526 Processing Times" August 25, 2022, available at https://blog.lucidtext.com/category/eb-5-statistics/ (*last accessed* Jan. 21, 2025) (tabling statistics pulled from USCIS published data and reports).

73.    On average, there were only two I-526 completions per working day in 2022 Q1 compared to fifty-nine in 2018 Q1. Id.

74.    There was only slight improvement in 2022 Q4 with 535 total I-526 adjudications, which averages to 8.5 I-526 completions per working day. *See* Lucid Professional Writing, "Processing Data" January 5, 2023, available at

https://blog.lucidtext.com/processing-data/ (*last accessed* Jan. 21, 2025). At that rate, it will take USCIS over 73 months to process a current pending I-526 petition. Id. However, that rate is faster than the average from FY 2022. In FY 2022, IPO only completed 1,415 I-526 petitions, which on average is less than 5.5 I-526 completions per working day. Id.

75.    There were 13,062 I-526 petitions pending at the end of FY 2022. Id.

76.    Plaintiff has raised factual questions regarding whether USCIS's processing times are reasonable and has plausibly alleged that Form I-526 and Form I-526E applications are not governed by a rule of reason. Further, Plaintiff has plausibly alleged that there is a pattern of persistent dysfunction and chaos at the IPO.

77.    Multiple courts have found that this precludes dismissal of Plaintiffs' unreasonable delay claims at the pleadings stage. *Lyons at 15, citing Liu v. Mayorkas*, 2021 WL 2115209, at *5; *Addala v. Renau*d, No. 20-cv-2460, 2021 WL 244951, at *3 (D.D.C. Jan. 25, 2021); *Nadhar at *4* (D. Ariz. Mar. 8, 2022) ("The first TRAC factor exposes the questions of fact that remain live in this matter, which favor denying the motion to dismiss."); *Velagapudi v. USCI*S, No. 22-CV-295, 2022 WL 4447409, at *7 (E.D. Mo. Sept. 23, 2022); *Gutta v. Renau*d, No. 20-cv-06579, 2021 WL 533757, at *8 (N.D. Cal. Feb. 12, 2021).

78.    Second, where Congress has provided a timetable for the speed an agency should process or adjudicate applications, this should provide a yardstick for this Court to assess the reasonableness of the delay.

79.    Congress provided direction to USCIS that petitions and applications for immigration benefits should be decided within 180 days. *See* 8 U.S.C. § 1571(b). Congress indicated it should take less than six months to act on these immigrant petitions, yet Plaintiffs' I-526E petition have already been pending for up to 13 months.

80.    Further, when reauthorizing the EB-5 program in May 2022, Congress instructed USCIS to set the I-526 fee to cover "the cost of completing adjudications, on average, not later than . . . 240 days after receiving a petition." Consolidated Appropriations Act of 2022, Pub. L. 117-103, § 106(b) (4), 136 Stat. 49, 1104 (*citing* Regional Center

Program provision, 8 U.S.C. § 1153(b) (5)). Yet, Plaintiff Aninda Mukherjee, 's Forms I-526E have also been pending outside this statutory timeline, USCIS failed to timely complete its fee study, and accordingly this factor weighs in favor of compelling agency action.

81.    Further, the reasonableness, or unreasonableness, of the delay "cannot be decided in the abstract." *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C.Cir. 2003). It must be decided through a fact-intensive inquiry that cannot take place without discovery.

82.    Third, the Agency's delay impacts human health and welfare, not merely economic interests. The harm to Plaintiff is palpable. For example:

f. Plaintiffs' EB-5 investments are, by definition, at risk. The ongoing delay of adjudication delays when the investment may be redeemed, requiring redeployment of the funds and increased risk of loss.

g. Plaintiffs' lives and the lives of their family members are on hold. The uncertainty of Plaintiffs' futures in the United States takes a heavy emotional and psychological toll.

h. Plaintiff have had to resort to a federal lawsuit to compel the Defendant to do their mandatory duty. Plaintiff have been forced to divert their time and monetary resources away from their businesses, families, and futures to find and pay an attorney, pay court fees, and file a lawsuit while awaiting a final decision on their Form I-526E. The scale of the sacrifices they have had to make is nonsensical, especially when added to the hundreds of thousands of dollars have invested into the United States already.

i. USCIS' delay is depriving him of the ability to acquire visas that are current. Such delay pushes back Plaintiffs' ability to acquire lawful permanent resident status and their eligibility to eventually naturalize as United States citizens.

j. USCIS's harms are also specific to the individual Plaintiff, as alleged in the factual sections above.

83.    Fourth, the Agency's delay adversely affects the Plaintiffs' ability to travel under restricted conditions, as the imminent **expiration of the Petitioner's Advance Parole authorization on March 14, 2025, has substantially curtailed his capacity to undertake international travel.**

84.    Fifth, there would be no prejudice to USCIS if they were ordered to adjudicate Plaintiffs' pending EB-5 petition. The Agency is nowhere near working towards its capacity given its higher fees on filings as well as its historically low production. There is no "line jumping" where the Agency fails to actually create a line and routinely deviates from a so-called rule of reason.

85.    USCIS staffs offices that process specific form types. A specific office exists for EB-5 related petitions. By statute, the agency is required to charge a fee that recaptures the expenses that are incurred during the adjudication process. The funds taken through each application are sufficient to accomplish the adjudication process of the I-526E petition within six months' time.

86.    The unlawful delay of Plaintiffs' EB-5 petition adjudication is not due to a lack of resources. USCIS sets the fees that it charges for each application that allows them to process petitions in a timely fashion. Moreover, delay durations increased after additional employees were hired and fees were increased.

87.    The funds taken through the application receipts are sufficient to accomplish the task of adjudicating within six months and do not account for such a historic delay after additional employees were hired and as fees increased.

88.    In FY 2022 Q1, there were <u>49 million dollars </u>of filing fees associated with pending Forms I-526. *See* Lucid Professional Writing, "Factors and Trends Underlying I-526 Processing Times" August 25, 2022, available at https://blog.lucidtext.com/category/eb-5-statistics/ (*last accessed* Jan. 21, 2025) (compiling statistics from USCIS published data and reports). Meanwhile, only 15% of IPO employees were assigned to I-526 adjudication. Id.

89.    Of the total I-526 petitions adjudicated in FY 2022, USCIS collected $718.5 million, $423.5 million of which was on denied petitions. *See* Lucid Professional Writing, "December / January Updates" January 6, 2023, available at https://blog.lucidtext.com/2023/01/06/december-january-updates-regional-center-status-visaavailability-i-526-and-i-829-processing-in-q4-fee-rule-form-i-526-and-i-956-revisions-andcomments/ (*last accessed* Jan. 21, 2024). The Agency cannot claim a lack of resources.

90.    It strains credulity to say compelling government action to make a decision would only put Plaintiffs' petitions to the front of the line. *See TRAC* at 80 (D.C. Cir. 1984) (*noting courts should consider the prejudice to the agency's claimed interest*). By every metric, the "line" for Form I-526E processing should not exist beyond six months. The labor-intensive aspects of the EB-5 petitions at issue have mostly been done, given the deference relating to Plaintiffs' cases.

91.    USCIS does not decide immigration petitions one at a time, in sequence, and by utilizing its entire staff. *Cf. Mashpee v. Norton,* 336 F.3d 1094, 1102 (D.C. Cir. 2003).

92.    Finally, while there is no need to find impropriety to rule in Plaintiffs' favor, there is no rational or benign explanation for the explosion in processing times. When seen in context of the Agency's overall approach to its statutory requirements, the circumstantial evidence of impropriety is palpable. This Court need not find such evidence to find the delay is unreasonable.

93.    Defendant has taken affirmative actions, unknown to the public, to purposefully delay adjudications of EB-5 petitions and applications contrary to law.

    a. As discussed above, USCIS has repeatedly violated federal law with regard to the mere receipting of many of the Plaintiffs' cases.

    b. For example, during a White House briefing, Department of Homeland Security Secretary Alejandro Mayorkas admitted that the Agency "gutted" the U.S. immigration system, which of course has resulted in harms to Plaintiffs.[5]

---

[5] *See* Owen, Quinn "DHS chief defends Biden admin on immigration, says Trump 'gutted'



c. USCIS also reports estimated processing times for certain immigration benefit applications. Prior to June 30, 2021, the estimated normal processing time in 2020 for an I-526 petition was 29.5 months"[6]

d. Now, the estimated normal processing time for an I-526 petition for investors in all other areas ("ROW") is 58.5 months. See U.S. Citizenship and Immigration Services, "Check Case Processing Times," available at https://egov.uscis.gov/processing-times/ (last accessed Jan. 26, 2025). **USCIS refuses to publish Form I-526E processing times.**

e. In any event, these delays are unreasonable and are evidence of USCIS's unreasonable delay in adjudicating pending petitions, especially in light of fee Increases.

f. Again, EB-5 regulations and guidance provide that the required jobs be created within 2.5 years of I-526 approval. In coming to this calculation, the Agency provides context that obtaining residency should not take longer than six months after Form I-526 approval. See 8 C.F.R. § 204.6(j)(4)(i)(B).[7]

g. While not a mandatory deadline, USCIS has ignored regulatory intent and its own guidance by inflating processing times, ignoring the specific timeliness needs of EB-5 immigrants like Plaintiff, and slowing down related applications.[8]

---

system," ABC News, (March 1, 2021), available at https://abcnews.go.com/politics/dhs-chiefdefends-biden-admin-immigration-trump=gutted/story?id=76189428 (last accessed Jan. 26, 2025).

[6] See e.g., Lazicki, S. "Interpreting Processing Times Reports, available at https://blog.lucidtext.com/2020/06/02/interpreting-processing-times-reports/ (last accessed Jan.26, 2025) ("USCIS uses the processing times report to create expectations about 'normalprocessing,' and to shut down inquiries. If you look at what the reported times represent, they in fact define abnormal and delayed processing.").

[7] See USCIS Policy Manual at Vol. 6, Ch. 2. ("Eligibility Requirements") available at https://www.uscis.gov/policy-manual/volume-6-part-g-chapter-2 (last accessed Jan. 26, 2025)

[8] See Policy Memo, USCIS, PM-602-0083, EB-5 Adjudications Policy, (May 30, 2013), available at https://www.uscis.gov/sites/default/files/document/memos/EB-5%20Policy%20Memo%205-30-1

h. Manipulation of processing times is especially true in the EB-5 context. For example, as discussed above, the Agency is under a statutory mandate to decide Form I-829 petitions within 90 days. Yet in October and November 2020, the processing times were estimated at 36.5 to 234 months. They then decreased. However, in March and April 2021, they increased again to 248 months. Put another way, USCIS has been informing the public and its stakeholders that a case with a strict adjudication time frame mandated by Congress was still within "normal" adjudication timeframes even if it were filed nearly three years before USCIS came into being (i.e., in Summer 2000). This also suggests overall bad faith regarding the adjudication of EB-5 related benefits and the publishing of processing times.

i. IPO processed 54 times fewer Forms I-526 in FY 2022 Q1 compared to the average for 2017-2018. *See* Lucid Professional Writing, "FY2022 Q1 USCIS Processing Report" March 14, 2022, available at https://blog.lucidtext.com/2022/03/14/fy2022-q1-uscis-processing-report/ (last accessed Jan. 26, 2025) ("Comparing FY 2022 Q1 volumes with the average for 2017-2018, IPO processed 2 times fewer I-829 and 54 times fewer I-526.").

j. In FY 2022, IPO only completed 1,415 I-526 petitions, which on average is less than 5.5 petitions per working day.

k. There exists relevant and probative evidence that processing times are artificially inflated to create a potential defense against lawsuits and also prevents members of the public and Congressional inquiries as to why petitions take so long. For example, USCIS continues to shift the estimated processing time for an I-526 petition so that one cannot submit inquiries online for cases

---

3.pdf (*last accessed* Jan. 26, 2025) (stating, per former USCIS Director and current United States Secretary of Homeland Security Alejandro Mayorkas that, "For purposes of the Form I-526 adjudication and the job creation requirements, the two-year period described in 8 C.F.R. 204.6(j)(4)(i)(B) is deemed to commence six months after the adjudication of the Form I-526."); *see* also e.g., Gutta (N.D. Cal. Feb 12, 2021) (denying the government's motion to dismiss given, inter alia, plaintiffs' credible allegations regarding this TRAC factor).

"outside normal processing time." USCIS' website and customer service hotline automatically refuse to accept inquiries for cases pending within "normal processing time," even when the stated "normal" processing time is several years.

l. In defense to EB-5 litigation such as this one, USCIS often issues affidavits from its agency officials that are at odds with each other,[9] or evidence intent to rectify wrongs to EB-5 applicants that never come to fruition.[10]

At best this is evidence of arbitrary EB-5 related adjudications and policy, at worst it is perjury.[11]

m. Indeed, USCIS is careless / manipulative with its statistics, as well. as the information and statements USCIS produces for the public. Accordingly, they cannot be taken credibly.[12]

n. Defendant has taken other actions to harm EB-5 petitioners, including but not limited to halting the printing of Permanent Resident Cards.[13]

---

[9] *Compare Nandu v. Jaddou*, 8:21-cv-00643-DOC-KES, ECF Doc. No 17-1 (C.A.C.D. Jul. 20, 2021) (Mr. Eliel Aguilera, Supervisory Immigration Services Officer at the California Service Center, declared that USCIS will not act on any Form I-131 that is "*dependent on the lapsed statutory authority*") *with Hulli v. Mayorkas*, 1:21-cv-00902-CRC, ECF Doc. No. 17-1 (D.D.C. June 22, 2021) (Mr. Aguilera declared that, if there were a lapse, applicants would still be able to receive Advance Parole).

[10] *See* Behring, 3:22-cv-02487-VC, Doc No 41-5 (declaration of USCIS IPO Chief Alissa Emmel, indicating that USCIS would refund fees for Forms I-924A submitted during the so-called Regional Center program lapse). No such refunds have occurred to date.

[11] *See* Dep't of Homeland Sec. v. Regents of U. of Cal., 591 U.S. 1, 24 (2020) ("[While m]en must turn square corners when they deal with the Government[,] . . . the Government should turn square corners in dealing with the people." (internal quotation marks and citation omitted).

[12] *See* Nadhar v. Renaud, 21-CV-00275, ECF. Doc No. 29-1 (D.AZ. June 9, 2021) (affidavit of Acting IPO Chief of Staff indicating that USCIS I-526 "touch time" based on "assumed metrics").

[13] *See*, e.g., Rampell, Catherine, "How the Trump administration is turning legal immigrants into undocumented ones", Washington Post, Jul. 9, 2020, available at https://www.washingtonpost.com/opinions/how-the-trump-administration-is-turning-legal-immigrants-into-undocumented-ones/2020/07/09/15c1cbf6-c203-11ea-9fddb7ac6b051dc8_story.html (*last accessed* Dec. 4, 2024).

1   94.    The Plaintiff has shown substantial evidence of USCIS's utter indifference to his

2   I-526E petitions and complete misinterpretation of the provisions outlining the RIA. Even

3   assuming *arguendo* that there is no finding of agency impropriety in this matter and

4   Defendant's processing times are accurate and issued in good faith, courts have held

5   that "depending on the grounds for the delays, even processing times at the low end of

6   the range could be unreasonable." *Raju v. Cuccinelli*, No. 20-CV-01386-AGT, 2020 WL

7   4915773 at *6 (N.D. Cal. Aug. 14, 2020); see also Barrios Garcia v. DHS, 14 F.4th 462,

8   488 (6th Cir. 2021) ("The average adjudication time says little about the

9   unreasonableness of USCIS's delay in Plaintiffs' case . . . We find it unhelpful to fixate

10  on the average snail's pace when comparing snails against snails in a snails' race.").

11  95.    Each TRAC factor weighs in favor of the Plaintiff and for this Court to order

12  USCIS to adjudicate his Form I-526E promptly. The delay caused by Defendant is

13  unreasonable and substantially unjustified.

### SECOND CAUSE OF ACTION

### (*Equal Access to Justice* Fees)

96.    Plaintiff re-allege all allegations contained herein.

97.    USCIS's current delay is substantially unjustified under the APA.

98.    Plaintiff is otherwise qualified for fees under the Equal Access to Justice Act.

**PRAYER FOR RELIEF**

Plaintiff respectfully request that the Court grant the following relief:

(a) Declare all delays described above in adjudication of the immigrant visa petitions unreasonable;

(b) Enter an order compelling USCIS to:

    a. Adjudicate Plaintiffs' Forms I-526E, I-485 and I-131 within 30 days;

- I-526E Receipt Number - IOE8705105494
- I-485 Receipt Number - WAC2490040129
- I-131 Receipt Number - LIN2590029139

    b. Adjudicate Plaintiffs' derivative Forms I-485.

- I-485 Receipt Number - WAC2490040126
- I-131 Receipt Number - LIN2590029129

    b. If the Agency issues any Plaintiff a request for evidence, it shall adjudicate that Plaintiff's Form I-526E and I-485 within 30 days of receiving the response thereto.

(c) Enter and issue other relief that this Court deems just and proper.

February 3, 2025

Respectfully submitted,

*Aninda Mukherjee*

Aninda Mukherjee
37611 Shelter Road
Newark
CA - 94560

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number | | Case Type |
|---|---|---|
| IOE8705105494 | | I526E - Immigrant Petition by Regional Center Investor |
| **Received Date** | **Priority Date** | **Applicant** A206 938 739 |
| 12/29/2023 | 12/29/2023 | MUKHERJEE, ANINDA |
| **Notice Date** | **Page** | |
| 03/19/2024 | 1 of 1 | |

MUKHERJEE, ANINDA
c/o TRIANTAPHYLLIS, CHRISTIAN
Jackson Walker. LLP
1401 MCKINNEY STE. 1900
HOUSTON TX 77010

**Notice Type:** Receipt Notice
Amount received: $4675.00 U.S.
Section: Investor - Target employment area,
203(b)(5)(C)(ii) INA

We have received the application or petition ("your case") listed above. This notice only shows that your case was filed on the "Received Date" listed above. It does NOT grant you any immigration status or immigration benefit, and it is not evidence that your case is still pending. We will notify you in writing when we make a decision on your case or if we need additional information.

Please save this and any other notices about your case for your records. You should also keep copies of anything you send us, as well as proof of delivery. Have these records available when you contact us about your case.

If any of the above information is incorrect or you have any questions about the status of your case, please call the USCIS Contact Center (UCC) at 1-800-375-5283 (TDD number is 1-800-767-1833) or visit the USCIS website at www.uscis.gov. If you call us, please have your Alien Registration Number (A-Number) and/or the receipt number shown above. The receipt number is a tracking number for your case and will help with inquiries.

Processing time - Processing times vary by case type. Go to www.uscis.gov to see the current processing times listed by case type and office.

- View your case status on our website's Case Status Online page.
- You can also sign up to receive free email updates as we process your case.
- Most of the time your case is pending, the process status will not change. This is because we are working on cases that were filed before your case.
- When we make a decision on your case or if we need something from you, we will notify you by mail and update our systems.
- If you do not receive an initial decision or update from us within our current processing time, contact the UCC at 1-800-375-5283 or visit our website at www.uscis.gov.

If your address changes - Non-U.S. citizens must report a change of address within ten (10) days of moving within the United States or its territories. To file a change of address visit the USCIS website at www.uscis.gov/addresschange or call UCC at 1-800-375-5283 (TDD number is 1-800-767-1833). Return of Original Documents - Use Form G-884, Request for the Return of Original Documents, to request the return of original documents submitted to establish eligibility for an immigration or citizenship benefit. You only need to submit one Form G-884 if you are requesting multiple documents contained in a single USCIS file. However, if the requested documentation is in more than one USCIS file, you must submit a separate request for each file. (For example: If you wish to obtain your mother's birth certificate and your parents' marriage certificate, both of which are in the USCIS file that pertains to her, submit one Form G-884 with your mother's information.)

NOTICE: The information you provide and in support of applications and petitions is submitted under the penalty of perjury. USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

Immigrant Investor Program Office
U.S. CITIZENSHIP & IMMIGRATION SVC
131 M. Street N.E.
Mail Stop 2235
Washington DC 20529-2235



USCIS Contact Center: www.uscis.gov/contactcenter

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C  10/13/21

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| NOTICE TYPE | NOTICE DATE |
|---|---|
| Receipt | January 24, 2024 |

| CASE TYPE | USCIS ALIEN NUMBER |
|---|---|
| I-485, Application to Register Permanent Residence or Adjust Status | A206938739 |

| RECEIPT NUMBER | RECEIVED DATE | PAGE |
|---|---|---|
| WAC2490040129 | December 29, 2023 | 1 of 1 |

| PRIORITY DATE | PREFERENCE CLASSIFICATION | DATE OF BIRTH |
|---|---|---|
| | Alien entrepreneur, Form I-526 | March 29, 1972 |

ANINDA MUKHERJEE
37611 SHELTER RD
NEWARK, CA 94560

3  00000860

**PAYMENT INFORMATION:**

| | |
|---|---|
| **Application/Petition Fee:** | $1,140.00 |
| **Biometrics Fee:** | $85.00 |
| **Total Amount Received:** | $1,225.00 |
| **Total Balance Due:** | $0.00 |

NAME AND MAILING ADDRESS

We have received your form and are currently processing the above case. If this notice contains a priority date, this priority does not reflect earlier retained priority dates. We will notify you separately about any other case you filed.

If we determine you must submit biometrics, we will mail you a biometrics appointment notice with the time and place of your appointment.

If you have questions or need to update your personal information listed above, please visit the USCIS Contact Center webpage at uscis.gov/contactcenter to connect with a live USCIS representative in English or Spanish.

**USCIS Office Address:**

USCIS
California Service Center
P.O. Box 30111
Laguna Niguel, CA  92607-0111

**USCIS Contact Center Number:**

(800)375-5283



If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C  10/13/21

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| NOTICE TYPE | | NOTICE DATE |
|---|---|---|
| Receipt | | November 25, 2024 |

| CASE TYPE | | USCIS ALIEN NUMBER |
|---|---|---|
| I-131, Application for Travel Document | | A206938739 |

| RECEIPT NUMBER | RECEIVED DATE | PAGE |
|---|---|---|
| LIN2590029139 | November 20, 2024 | 1 of 1 |

| | | DATE OF BIRTH |
|---|---|---|
| | | March 29, 1972 |

ANINDA MUKHERJEE
37611 SHELTER RD
NEWARK, CA 94560

13  00004708

**PAYMENT INFORMATION:**

| Application/Petition Fee: | $0.00 |
|---|---|
| Total Amount Received: | $0.00 |
| Total Balance Due: | $0.00 |

**NAME AND MAILING ADDRESS**

We have received your form and are currently processing the above case. If this notice contains a priority date, this priority does not reflect earlier retained priority dates. We will notify you separately about any other case you filed.

If we determine you must submit biometrics, we will mail you a biometrics appointment notice with the time and place of your appointment.

If you have questions or need to update your personal information listed above, please visit the USCIS Contact Center webpage at uscis.gov/contactcenter to connect with a live USCIS representative in English or Spanish.

| **USCIS Office Address:** | **USCIS Contact Center Number:** |
|---|---|
| USCIS | (800)375-5283 |
| Nebraska Service Center | |
| P.O. Box 82521 | |
| Lincoln, NE 68501-2521 | |





If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C   10/13/21

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| NOTICE TYPE | NOTICE DATE |
|---|---|
| Receipt | November 25, 2024 |

| CASE TYPE | USCIS ALIEN NUMBER |
|---|---|
| I-131, Application for Travel Document | A113591458 |

| RECEIPT NUMBER | RECEIVED DATE | PAGE |
|---|---|---|
| LIN2590029129 | November 20, 2024 | 1 of 1 |

| | | DATE OF BIRTH |
|---|---|---|
| | | November 03, 1976 |

HINDOLY MUKHERJEE
37611 SHELTER RD
NEWARK, CA 94560

13 00004709

**PAYMENT INFORMATION:**

| | |
|---|---|
| Application/Petition Fee: | $0.00 |
| Total Amount Received: | $0.00 |
| Total Balance Due: | $0.00 |

|�|ₗₗᵢₗ|ᵢ||ₗₗ•ₗₗₚₗ•ᵢₗₗₚₗₗₗₗ|ᵢ||ₗᵢₗ|ₗₗₗₗₗₗₗₗₗₗₗₗₗₗ|ₗₗ|

**NAME AND MAILING ADDRESS**

We have received your form and are currently processing the above case. If this notice contains a priority date, this priority does not reflect earlier retained priority dates. We will notify you separately about any other case you filed.

If we determine you must submit biometrics, we will mail you a biometrics appointment notice with the time and place of your appointment.

If you have questions or need to update your personal information listed above, please visit the USCIS Contact Center webpage at uscis.gov/contactcenter to connect with a live USCIS representative in English or Spanish.

**USCIS Office Address:**

USCIS
Nebraska Service Center
P.O. Box 82521
Lincoln, NE 68501-2521

**USCIS Contact Center Number:**

(800)375-5283





If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C  10/13/21

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| NOTICE TYPE | | NOTICE DATE |
|---|---|---|
| Receipt | | January 24, 2024 |

| CASE TYPE | | USCIS ALIEN NUMBER |
|---|---|---|
| I-485, Application to Register Permanent Residence or Adjust Status | | A113591458 |

| RECEIPT NUMBER | RECEIVED DATE | PAGE |
|---|---|---|
| WAC2490040126 | December 29, 2023 | 1 of 1 |

| PRIORITY DATE | PREFERENCE CLASSIFICATION | DATE OF BIRTH |
|---|---|---|
| | Alien entrepreneur, Form I-526 | November 03, 1976 |

HINDOLY MUKHERJEE
37611 SHELTER RD
NEWARK, CA 94560

3   00000859

**NAME AND MAILING ADDRESS**

**PAYMENT INFORMATION:**

| | |
|---|---|
| **Application/Petition Fee:** | $1,140.00 |
| **Biometrics Fee:** | $85.00 |
| **Total Amount Received:** | $1,225.00 |
| **Total Balance Due:** | $0.00 |

We have received your form and are currently processing the above case. If this notice contains a priority date, this priority does not reflect earlier retained priority dates. We will notify you separately about any other case you filed.

If we determine you must submit biometrics, we will mail you a biometrics appointment notice with the time and place of your appointment.

If you have questions or need to update your personal information listed above, please visit the USCIS Contact Center webpage at uscis.gov/contactcenter to connect with a live USCIS representative in English or Spanish.

**USCIS Office Address:**
USCIS
California Service Center
P.O. Box 30111
Laguna Niguel, CA 92607-0111

**USCIS Contact Center Number:**
(800)375-5283



If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C   10/13/21